CHAMPLAIN CONST. CO. v. O'BRIEN et al.

(Circuit Court, D. Vermont. February 26, 1901.)

1. INJUNCTION—PROCEEDINGS FOR CONTEMPT—CONSTRUCTION OF ORDER.

On granting an injunction restraining subcontractors from hindering the completion of the work of constructing a railroad by the contractor, a reciprocal order required complainant, on defendants submitting their pay rolls, to pay their and their subcontractors' obligations to their "laborers and employés * * * and subcontractors, of whatever grade, including time keepers, foremen, and office clerks," whose names appear on the pay rolls. *Held*, in contempt proceedings, that the words "of whatever grade" referred to "employés" and not to subcontractors, and applied to laborers and employés of every grade, including time keepers, foremen, and office clerks, whose names appeared on the pay rolls and time sheets for the time covered, and to no more, and that the order did not cover supplies, materials, use of boats, or horse hire, nor board of men, except in connection with their wages, nor any labor or service outside of the time specified in the requirement.

2. SAME—PERFORMANCE OF ORDER—DUTY OF CONTEMNER.

A bill for wages ordered to be paid to a railroad subcontractor by complainant in a bill for injunction against the contractors to restrain them from hindering complainant from completing the construction was not paid by the orator, owing to a misunderstanding between its treasurer and agent. *Held*, in proceedings for contempt, that such misunderstanding should have been removed by complainant and the bill paid.

3. SAME.

A reciprocal order made on granting an injunction restraining contractors from hindering the taking over the work of constructing a railroad required complainant to pay wages due from the contractors and their subcontractors. *Held*, in proceedings for contempt, not to include wages which could not be paid without paying claims not included therein.

In Equity.

Frederick H. Button, for orator.
Thomas W. Moloney, for defendants.

WHEELER, District Judge. The state court from which this cause was removed granted an injunction restraining the defendants from hindering the taking over of the work of constructing the Rutland Canadian Railroad, then being done by them, with a reciprocal order that they submit to the orator their pay rolls "showing names and time employed and wages of all men employed in any capacity upon or in connection with the construction of the Rutland Canadian Railroad during the month of September, 1900, and from the 1st to the 11th day, inclusive, of October, 1900, including sums due for use or hire of teams, boats, and all other accessories of said construction," and "that the orator assume and pay the obligations of the defendants, O'Brien & Sheehan, and of their subcontractors, to the laborers, employés of said defendants, and subcontractors, of whatever grade, including time keepers, foremen, and office clerk, whose names appear upon said time sheets and pay rolls for the time covered by the same, including sums due for board or store bills appearing upon said pay rolls as deductions, and. that the orator shall pay forthwith after maturity the obligations so ordered to be assumed." These orders came with the cause to this court under section 4 of the act of 1875, which provides that "all injunctions, orders, and other proceedings, had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed." 18 Stat. 471. These orders were continuing by their terms as dependencies of the injunction, "especially that upon the orator requiring payment to employés of the defendants, and would be violated by continuing failure to pay after the cause came into this court"; and the question here is whether there has been a continuing failure to pay in compliance with that order hitherto. The chancellor, in his discretion, did not make the order to assume and pay so broad as that for submitting pay rolls, by requiring whatever should be due upon them to be assumed and paid, but left it applicable to laborers, employés of defendants, and subcontractors, of whatever grade, including time keepers, foremen, and office clerk. Although the defendants were doing the work at prices by quantities, and whatever should be paid upon this order would, of course, be reckoned in determining the amount due, and the question would only'. be important as to who should advance the money on these pay rolls, still, as this proceeding for contempt is in nature criminal, the order must be construed strictly according to the fair meaning of its terms. So considered, the words "of whatever grade" appear to refer to "employés," and not to subcontractors; and it seems to apply to laborers and employés of every grade, including time keepers, foremen, and office clerk, whose names appear on the time sheets and pay rolls for the time covered, and to no more. It does not cover supplies, materials, use of boats, or horse hire, nor board of men, except in connection with their wages, nor any labor or services outside of September and the first 11 days of October. The items in question have been referred to a master for a report of the facts, and compliance or noncompliance with the order is to be determined on comparison of the facts with its terms. The bill of

E. N. Goodsell, a subcontractor, for wages during that time, amounting to $472, appears to have been sufficiently full,—no particular form being necessary,—and to have failed of payment through a misunderstanding between the orator's treasurer and agents, which should have been removed by them and the bill paid. Heustis, engineer, and Burnap and Bostwick, assistant engineers, upon the findings, come within the description, and they should have been paid for the time covered. From the exhibits the amount due them appears to have been $385.80 for September and $124.37 for October. Roberts, engineer, did not come within the time. If the men working on boats could be separated from the boats, they would probably be within the description, but the boats appear to have been hired with the men; and boat hire is mingled with wages, and cannot be separated so as to leave the men without the boats to be included. The defendants were to submit the time sheets and pay rolls for the information and convenience of the orator in continuing the work, which were to include all current outlays of the work, and they were to pay these laborers and employés, as a part of the continuation of the work. The time sheets and pay rolls to be submitted were those kept by and for the defendants, and the orator would have no control over making them, and would be required to act upon them only as they should be submitted, and to pay only what they fairly showed was to be paid, without including anything not within the terms of the order. Time of laborers and employés so submitted, with blacksmith bills, livery bills, hotel bills, supply bills, or board bills, that the wages could not be distinguished from the other charges, or from wages from time not covered by the order, and could not be paid without paying what was not by the order to be paid, would not come within the order. Upon the master's report, the wages of Duncan's men in fulfilling a contract for piles was not so distinguished or distinguishable. These items of $472 for Goodsell's men and $385.80 and $124.37 for engineers are the only ones that appear to have been so clearly submitted as to require payment. As the orator appears to have acted under advice, and not in bad faith, nothing distinctly by way of punishment seems appropriate. If these sums, amounting to $982.17, with the costs of this proceeding, are paid within 30 days. it may be entered "Discontinued." If not, it will remain for further consideration.